UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CATHOLIC CHARITIES OF THE** | * | **CIVIL ACTION NO.** |
| **DIOCESE OF BATON ROUGE, INC.** | * | **3:15-cv-00197-JWD-RLB** |
| | * | |
| | * | **JUDGE DEGRAVELLES** |
| **VERSUS** | * | |
| | * | |
| | * | **MAGISTRATE BOURGEOIS** |
| **FRANCIS DANIEL CHAVIS** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF CATHOLIC CHARITIES OF THE DIOCESE OF BATON ROUGE, INC.'S MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Catholic Charities of the Diocese of Baton Rouge, Inc. ("CCDBR"), and submits this Memorandum in Support of its Motion for Summary Judgment as to its claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (the "CFAA"). As shown in this Memorandum and the attached Exhibits, Defendant, Francis Daniel Chavis ("Defendant"), exceeded his authorized use of the CCDBR computer and email address supplied to him during his employment, which resulted in damages to CCDBR in excess of $5,000. Accordingly, CCDBR respectfully requests that the Court grant the instant Motion and find that Defendant is liable under the CFAA for losses suffered by CCDBR in responding to Defendant's unauthorized access.

I.  **Background Facts**

CCDBR is a Louisiana non-profit corporation with its principal place of business located at 1900 S. Acadian Thruway, Baton Rouge, Louisiana 70808. CCDBR is a charitable organization that serves a broad range of people in need, including families in financial crisis, newly-arrived refugees, seniors in need of jobs, adults with disabilities, unwed mothers, disaster relief, homeless families, and ex-offenders, among others, through a variety of social programs.

1

*See* Declaration of Mr. David Aguillard, Executive Director, ¶ 2, attached hereto as **Exhibit "A"** ("Aguillard Decl.").

Defendant is a former employee of CCDBR. *Id.* at ¶ 3. CCDBR first hired Defendant as an Employment Counselor on August 29, 2011. *Id.* at ¶ 4. CCDBR promoted Defendant to the position of Director of Adult Services on or about July 1, 2012, and he served in that role until his position was eliminated on July 7, 2014, due to budget cuts and organizational restructuring. *Id.* at ¶ 4.

During his employment with CCDBR, Defendant agreed to abide by certain policies and procedures of CCDBR as a condition of his employment. At the beginning of his employment, Defendant received a copy of CCDBR's Employee Handbook and other related personnel policies, and he signed an acknowledgment of receipt on August 29, 2011, a copy of which is attached as **Exhibit "1"** to Aguillard Decl., Exhibit "A." Defendant specifically acknowledged that he had access to and learned confidential material of CCDBR, including its Title V participant lists, personal information of refugees, and "client disclosures and information regarding clients." *See* Confidentiality Policy, attached as **Exhibit "2"** to Aguillard Decl., Exhibit "A." He also agreed that the "[i]nternal affairs, operations, or fiscal business of the agency is to be regarded as a confidential matter of agency business and held in confidence." *Id.* The Confidentiality Policy applies to "[a]ny employee, past or present." *Id.* Violations of the Confidentiality Policy "may result in dismissal and appropriate legal action." *Id.*

Defendant also agreed that CCDBR's confidential and other materials were the "property" of CCDBR. *See* Publications Policy, attached as **Exhibit "3"** to Aguillard Decl., Exhibit "A." Defendant again acknowledged that such materials were the "property of [CCDBR] and [that he] was] required to return such when instructed by [CCDBR]" on June 27, 2014. *See* Return of

Property Acknowledgment form dated June 27, 2014, and signed by Defendant, attached as **Exhibit "4"** to Aguillard Decl., Exhibit "A."

Defendant was also subject to CCDBR's "Computer And Cellular Phone Policy," which provides in pertinent part that CCDBR's "information resources are intended for agency related purposes, including direct and indirect support of the agency . . ." and that "[a]ll of the information resources are and remain at all times the property of [CCDBR]." *See* Computer and Cellular Phone Policy, attached as **Exhibit "5"** to Aguillard Decl., Exhibit "A." That policy also provides that "[e]mployees recognize that all documents, e-mail or other data on CCDBR computers is the property of CCDBR and may be reviewed at any time." *Id.* Employees are further directed to "[r]efrain from using information resources for personal commercial purposes or for personal financial or other gain. Such use is strictly prohibited." *Id.* Acceptance of the Computer and Cellular Phone Policy is "a condition of employment" at CCDBR. *Id.*

On or about December 17, 2014, Defendant sent a letter to the Diocese of Baton Rouge through his attorney. Aguillard Decl., Exh. A, ¶ 8. The letter contained numerous false statements and misrepresentation of facts contained in CCDBR documents. *Id.* On review of the letter from Defendant's attorney, it was apparent that it included information that could only have been obtained from confidential information taken from CCDBR in violation of Defendant's obligations and his express written acknowledgment on June 27, 2014. *Id.* CCDBR sent a letter to Defendant on or about March 10, 2015, in which CCDBR reminded Chavis of his June 27, 2014 acknowledgment, and again requested that all documents and property of CCDBR be returned and that he provide a notarized statement stating that he had returned all documents and destroyed any other copies. *Id.* at ¶ 9.

Defendant responded by letter dated March 19, 2015, in which he provided copies of some documents to CCDBR, but admitted that he was retaining copies of documents that he believed supported his false allegations against CCDBR. *See* Letter dated March 19, 2015, attached as **Exhibit "6"** to Aguillard Decl., Exhibit "A." Defendant further refused to provide a notarized attestation that he had returned or destroyed all copies of any documents. *Id.* In other words, Defendant refused to comply with his obligations to return CCDBR property and maintain confidentiality of said documents, and further admitted that he had converted the documents for his own benefit — to make false statements about, threaten litigation against and to demand payment from CCDBR. *Id.*

After receiving Defendant's March 19, 2015 letter, it became apparent that Defendant's conversion of documents and other confidential information was greater than initially thought, so CCDBR began investigating its email archives. Aguillard Decl., Exh. A, ¶ 11. CCDBR's investigation revealed that beginning immediately after his employment by CCDBR in August of 2011, Defendant covertly and without authorization transmitted at a minimum 120 separate CCDBR emails from his CCDBR email account to his personal email account and the email accounts of his wife. *Id.* at 12. Defendant has refused to destroy these emails. Some of the content of these emails relates to confidential information of CCDBR's program participants, use of which is governed by Title V of the Older Americans Act, U.S. Department of Labor regulations, State of Louisiana regulations, the Migration and Refugee Assistance Act of 1962, and contracts between CCDBR and the State of Louisiana. *Id.* Other forwarded e-mails contained policies and procedures of CCDBR as well as a funding opportunity that he instructed his wife to pursue. *Id.*

CCDBR filed suit against Defendant on April 2, 2015, to safeguard its information but to also recover the sums expended in responding to Defendant's unauthorized access. On May 22, 2015, the Court granted CCDBR's request for an injunction in part, prohibiting Defendant from altering or deleting any CCDBR documents or information. [Doc. No. 5].[1] Now, CCDBR moves for summary judgment on its claim under the CFAA, as it is beyond dispute that Defendant's unauthorized access of CCDBR's computer system and email resulted in losses to CCDBR.

## II.     Law and Argument

### A.     Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the Court must view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine dispute of fact for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). Because there is no genuine dispute of fact that Defendant exceeded his authorized access during his employment with CCDBR and that his unauthorized access caused damages to CCDBR, CCDBR is entitled to summary judgment.

---

[1] CCDBR's inspection of Defendant's computer and email addresses revealed that some emails had been deleted and files maintained on the computer had been altered as recently as February 29, 2016, long after the Court entered its injunction and just a week before the computer inspection. *See* Declaration of Chad Odom, attached as Exhibit "B," ¶ 4 ("Odom Decl.").

5

## B. The Computer Fraud and Abuse Act

The CFAA prohibits, inter alia, unauthorized access to a protected computer for the purposes of obtaining information, causing damage, or perpetrating fraud. 18 U.S.C. § 1030(a)(2), (a)(4), (a)(5). Although the CFAA is a criminal statute, subsection (g) provides a private right of action when the unauthorized access to a protected computer results in "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value." 18 U.S.C. § 1030(a)(5)(B)(i). "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B) ...." 18 U.S.C. § 1030(g).

## C. Defendant intentionally exceeded his authorized access and caused loss to CCDBR exceeding $5,000.00.

The evidence clearly establishes that Defendant intentionally exceeded his authorized access, and his unauthorized access caused losses greater than $5,000.00 to CCDBR. Without question, Defendant transmitted no less than 120 emails from his CCDBR email address to his personal email addresses during his employment. Aguillard Decl., Exh. A, ¶ 12; Odom Decl., Exh. B, ¶¶ 3-4. Defendant's transmission of confidential and proprietary information by electronic mail could not have been anything but intentional, as the electronic mail messages were all sent to electronic mail addresses controlled by Defendant and he could not have transmitted them accidentally. Aguillard Decl., Exh. A, ¶ 12; Odom Decl., Exh. B, ¶ 3.

Defendant's transmission of CCDBR's information to his personal email addresses also exceeded his authorized access as defined by the CFAA. Specifically, Defendant obligated himself to maintain the confidentiality of any and all CCDBR documents or information without

6

respect to its content or form, and he also agreed that any such documents or information contained in his CCDBR-provided email account was solely the property of CCDBR. Aguillard Decl., Exh. A, ¶¶ 5-12. *See e.g. Frisco Medical Center, L.L.P. v. Bledsoe*, --- F.Supp.3d ----, 2015 WL 7734108, *9 (E.D. Tex. Nov. 30, 2015) (defendants' transmission of company files to personal Dropbox account, which was prohibited by company policy, satisfied "unauthorized access" prong of CFAA claim on summary judgment). Thus, Defendant was not authorized to transmit <u>any</u> emails from CCDBR email address using his CCDBR computer to his personal email address, and in fact he was expressly prohibited from doing so.

Furthermore, CCDBR has suffered losses greater than $5,000.00. "Loss" is defined under the CFAA as "any reasonable cost to [the] victim, including the cost of responding to an offense, conducting a damage assessment..." and courts have held that the costs of a forensic investigation/damage assessment constitute loss under the CFAA. 18 U.S.C. § 1030(e)(11); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645–46 (4th Cir. 2009); *see Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F.Supp.2d 766, 776 (S.D. Tex. 2010). Once CCDBR learned of Defendant's unauthorized access, its personnel spent significant time assessing the extent of Defendant's misconduct, as well as in evaluating how to safeguard data belonging to third parties and ensure the integrity of CCDBR's data. *See* Second Declaration of David Aguillard, attached hereto as Exhibit "C," ¶¶ 6-7 ("Second Aguillard Decl."); *see also* Declaration of Kathy Naquin, attached hereto as Exhibit "D," ¶¶ 4-8 ("Naquin Decl."). The cost of the personnel time devoted to responding to Defendant's unauthorized access totaled no less than $7975.10, as attested by Mr. Aguillard and Ms. Naquin. Second Aguillard Decl., Exh. C, ¶¶ 7-8; Naquin Decl., Exh. D, ¶¶ 6-8. These losses are recoverable under the CFAA and reasonable given the sensitivity of the

information contained in the emails and CCDBR's obligations to safeguard third party information wrongly transmitted and retained by Defendant. Aguillard Decl., Exh. A, ¶ 12.

As a direct and proximate result of Chavis's violations of the CFAA, CCDBR has incurred loss of not less than $5,000.00, including, but not limited to, the costs associated with investigating and responding to Chavis's violations of the Confidentiality Policy, the Computer and Cellular Phone Policy, his signed acknowledgment, and applicable law, and is entitled to a summary judgment from this Court, in its favor, and against Chavis in the full amount of such damages.

### III.   Conclusion

Respectfully, Defendant cannot dispute that he violated the CFAA by covertly and surreptitiously exceeding his authorization when he transmitted at a minimum 120 emails from an email account provided by CCDBR - solely for use in connection with his employment - to his own personal email addresses. CCDBR's policies clearly prohibit the transmission of these emails, regardless of their content, as they were CCDBR's property. Further, some emails included confidential information protected by statute or by contract, and CCDBR suffered losses in diverting personnel to deal with Defendant's unauthorized access. CCDBR urges the Court to grant it summary judgment, finding that Defendant violated the CFAA and awarding CCDBR its losses in the amount of $7,975.10.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By: */s/ M. Levy Leatherman*
    M. LEVY LEATHERMAN (33235)
    KATHERINE L. CICARDO (35081)
    Chase North Tower
    450 Laurel Street, 20th Floor
    Baton Rouge, Louisiana 70801
    Telephone:  (225) 381-7000
    Facsimile:   (225) 343-3612
    E-mail: lleatherman@bakerdonelson.com
    E-mail: kcicardo@bakerdonelson.com

**ATTORNEYS FOR CATHOLIC CHARITIES OF THE DIOCESE OF BATON ROUGE, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2015, I caused to be electronically filed the foregoing pleading and Exhibits with the Clerk of the Court using the CM/ECF system, which provided electronic notice to counsel of record.

                                      */s/ M. Levy Leatherman*